UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH STRIEGLE,

      Plaintiff,

v.                                  Case No. 1:07-cv-570
                                  HON. JANET T. NEFF

MICHIGAN DEPARTMENT OF
CORRECTIONS, et al.,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Joseph Striegle filed this prisoner 42 U.S.C. § 1983 action against the Michigan Department of Corrections (MDOC) in its official capacity, MDOC director Patricia Caruso in her official capacity, Correctional Medical Services, Inc., in its official capacity, and Nancy Lange and George Kuzma in their official and individual capacities.

Plaintiff alleges that defendants failed to properly provide him with medical care. Plaintiff complained in March 2006 that he was experiencing excessive rectal bleeding. On April 2, 2006, his blood count was taken and on April 30, 2006, a stool sample was taken. On May 8, 2006, it was confirmed that blood was present in plaintiff's stool. Plaintiff was told that he had emphysema and polyps in his rectum. Plaintiff was not tested for colon cancer although he was informed that he could have cancer. On July 12, 2006, plaintiff saw defendant Dr. George Kuzma, who informed plaintiff that his blood count was too low. Dr. Kuzma told plaintiff that he did not have emphysema and that he did not have polyps. On September 28, 2006, plaintiff collapsed and needed a blood transfusion. Plaintiff was released from the hospital seven days later. Plaintiff did

not see a doctor until November 4, 2006, and was taken to the hospital with an "extremely low" blood level.

Plaintiff alleges that CMS employee Nancy Lange and MDOC Director Caruso should have known about the poor treatment of prisoners. Plaintiff alleges that it is the practice of the MDOC to seek the most cost efficient treatment of prisoners and to delay treatment until a prisoner is life threatened.

Defendants have moved for summary judgment. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close***,** 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other

evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendants claim that they are entitled to summary judgment because Plaintiff failed to exhaust his available administrative remedies. Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 127 S. Ct. 910, 922-23 (2007); *Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 127 S. Ct. at 922-23.

MDOC Policy Directive 03.02.130 (effective Dec. 19, 2003)[1], sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control

---

[1]The MDOC recently amended Policy Directive 03.02.130 on July 9, 2007. However, the 2003 version of the policy directive was in effect at all times applicable to this lawsuit.

*Id.* at ¶ R.  If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution.  *Id.* at ¶¶ R, X.  The Policy Directive also provides the following directions for completing grievance forms: "The issues shall be stated briefly.  Information provided shall be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ T (emphasis in original).  The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent.  *Id.* at ¶ Y.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within five business days of the response, or if no response was received, within five days after the response was due.  *Id.* at ¶¶ R, DD.  The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances.  *Id.* at ¶ FF.  If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ R, HH.  The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due.  *Id.* at ¶ HH.  The Prisoner Affairs Section is the respondent for Step III grievances on behalf of the MDOC director.  *Id.* at ¶ II.  Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process.  *Id.* at ¶ U.  "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved . . . ."  *Id.*

In addition, the grievance policy provides that, where the grievance alleges staff brutality or corruption, the grievance may be submitted directly to Step III. *Id.* at ¶S. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.*

Defendants have shown that plaintiff never filed a Step III grievance. Plaintiff asserts that defendants never told him how to file his Step III grievance and that his medical condition prohibited him from filing a Step III grievance. Further, plaintiff claims that he submitted a homemade Step III grievance. It is clear that plaintiff failed to follow the appropriate procedures necessary to file a Step III grievance. In the opinion of the undersigned, plaintiff's complaint should be dismissed without prejudice for failure to exhaust grievance remedies.

Alternatively, defendants CMS and George Kuzma move for dismissal or summary judgment on the merits. Plaintiff has alleged that he suffered with rectal bleeding, was examined by Dr. Kuzma, and on two occasions was taken to a hospital where, at least on one occasion, he received a blood transfusion. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the

- 5 -

plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farme*r, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 105-06 (quotations omitted).  Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim.  *Sanderfer*, 62 F.3d at 154-55; *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996).  This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering.  *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment."  *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976).  Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."  *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976); *see also*, *Brock v. Crall*, No. 00-5914, 2001 WL 468169, at *2 (6th Cir. Apr. 27, 2001); *Jones v. Martin*, No. 00-1522, 2001 WL 223859, at *1 (6th Cir. Feb. 28, 2001); *Williams v. Mattson*, No. 99-1796, 2000 WL 924145, at *1 (6th Cir. June 28, 2000); *Davis v. Ulep*, No. 97-2124, 1999 WL 98390, at *1 (6th Cir. Jan. 29, 1999); *Cain v. Huff*, No. 96-1613, 1997 WL 377029, at * 4 (6th Cir. July 2, 1997); *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at * 2 (6th Cir. Apr. 4, 1997).

Plaintiff has failed to explain how defendant Kuzma or defendant CMS could have violated plaintiff's constitutional rights.  Plaintiff was examined by defendant Kuzma and was taken on two occasions to a hospital where he received treatment.  Plaintiff has claimed that his medical treatment was delayed.  However, plaintiff does not state how his treatment was delayed or that

anything could have been done in advance to prevent the incidents that lead to his hospital visits. Moreover, plaintiff has failed to show that defendants acted with deliberate indifference by delaying necessary medical care.

Defendants have filed a motion to discover plaintiff's medical records. Plaintiff's medical records are relevant. However, if the court accepts this recommendation, the motion is moot and should be denied.

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to defendants' motions for summary judgment. Accordingly, it is recommended that Defendants' motion for summary judgment (Docket #8 and #12 ) be granted without prejudice and that this case be dismissed in its entirety. It is further recommended that defendants' motion to discover plaintiff's medical records (Docket #21) be denied and plaintiff's motion for default judgment (Docket #27) be denied.

Further, if the court adopts this recommendation the court should decide that an appeal of this action would not be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the court grants defendants' motion for summary judgment, the court can discern no good-faith basis for an appeal. It is recommended that should the plaintiff appeal this decision, the court assess the $455 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he should be required to pay the $455 appellate filing fee in one lump sum.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of

this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).


 /s/ Timothy P. Greeley                      
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:  February 14, 2008